IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHARON CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 1:22-cv-00633-CJB |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| DALE E. STARKE, individually, JAMES P. ) | |
| PIAZZA, individually, and the CITY OF ) | |
| DOVER, DELAWARE, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## AMENDED COMPLAINT

### The Parties

1.  Plaintiff ShaRon Caldwell ("Ms. Caldwell") is an African American female resident of Kent County, Delaware.

2.  Defendant Dale E. Starke ("Starke") is a resident of Kent County, Delaware. At all times relevant, Starke was a police officer employed by the Defendant City of Dover, Delaware ("City" or "Dover") and its police department. At all times relevant, he was acting under color of law as an agent or employee of the City's police department. Defendant Starke is sued in his individual capacity.

3.  Defendant James P. Piazza ("Piazza") is a resident of Kent County, Delaware. At all times relevant, Piazza was a police officer employed by the Defendant City and its police department. At all times relevant, he was acting under color of law as an agent or employee of the City's police department. Defendant Piazza is sued in his individual capacity.

1

4. Defendant City of Dover, Delaware is a municipal corporation duly organized, existing, and operating under and pursuant to the applicable laws of the State of Delaware. At all times relevant, the City was the employer of Defendants Starke, and Piazza. At all times relevant, the City had responsibility for hiring, training, supervising, disciplining, and retaining police officers employed by the City, including Defendants Starke and Piazza.

5. Defendant Starke is or was married to Jenna (Hosfelt) Starke. Jenna (Hosfelt) Starke is the daughter of the previous Chief of Police for the City, James E. Hosfelt, Jr. Former Chief Hosfelt retired as Chief of Police in 2014, but he was then elected to the City Council for Dover in 2015. In 2017, he was elected to the Kent County Levy Court, which governs Kent County, Delaware. James E. Hosfelt, Jr., vacated his City Council seat when he took his seat on Levy Court. Dover is located within Kent County. Upon information and belief, the relationship between Defendant Starke and Jenna (Hosfelt) Starke allowed Defendant Starke to escape responsibility for activities for which a police officer for the City would normally be held to account.

## Jurisdiction & Venue

6. This is a civil action for damages arising under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and § 1988, and the statutory and common law of the State of Delaware.

7. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. Personal jurisdiction is proper since all parties either reside in the District, conduct business in the District, and the unlawful actions giving rise to the claim took place within this District.

9. Venue is properly in this Court pursuant 28 U.S.C. § 1391(b) because the events giving rise to the suit occurred in this judicial District.

10. Former counsel for Ms. Caldwell sent a letter on or about July 2, 2020, via certified mail, return receipt requested, to Donna S. Mitchell, the City Manager of the City putting the City on notice of Ms. Caldwell's claims. The certified letter to Donna S. Mitchell was received by the City on July 7, 2020.

**May 13, 2020**

11. Between 9:00 p.m. and 9:30 p.m. on Wednesday, May 13, 2020, Defendant Starke was patrolling the City of Dover.

12. At approximately the same time, Ms. Caldwell was operating her Jaguar vehicle with four passengers. Her headlights were not illuminated. All four of the occupants of the Jaguar were African American. Utilizing her right turn signal, Ms. Caldwell turned right onto Mary Street.

13. As Ms. Caldwell approached Defendant Starke on Mary Street, Defendant Starke stopped. As she got close, Defendant Starke turned on his high-beam lights – not his emergency lights – to confirm the vehicle was occupied by four African Americans.

14. Ms. Caldwell drove past Defendant Starke's vehicle, and she turned right onto North New Street. At the time, she resided in a house very close to the intersection of North New Street and Mary Street. She parked her car in front of the house.

15. Meanwhile, Defendant Starke performed a three-point turn on Mary Street and began proceeding in the direction from which he came. He made a right hand turn onto Mary Street.

16. He only activated the light bar on his police cruiser after he made the turn onto Mary Street and while Ms. Caldwell was exiting her parked vehicle.

17. When he stopped, Ms. Caldwell asked Defendant Starke why she was being stopped. Defendant Starke aggressively yelled at Ms. Caldwell to get back in her car. Ms. Caldwell, who was still confused as to why she was even being stopped after she was parked in front of her house, continued to ask why she had to get back in her vehicle.

18. Defendant Starke asked Ms. Caldwell if the vehicle belonged to her, and she responded that it did. He then asked for her license and registration. Realizing her license and registration were not in her vehicle, Ms. Caldwell told Defendant Starke that it was inside her home with her renter's policy and asked if she could retrieve it. Defendant Starke denied her request. Ms. Caldwell continued to ask why she had been stopped.

19. At some point during this conversation, Defendant Starke turned his back on Ms. Caldwell and walked between their cars toward the rears of their cars. He returned to the area of Ms. Caldwell's driver's door. Defendant Starke then told Ms. Caldwell to get back into her vehicle, and she complied. Defendant Starke again turned and walked away from Ms. Caldwell.

20. Ms. Caldwell left the driver's door open on the vehicle. When Defendant Starke returned to Ms. Caldwell, he stood in between the open door and Ms. Caldwell so the door could not be closed.

21. Around this time, Patrolman Clancy from the City's Police Department arrived and parked behind Ms. Caldwell's vehicle. Defendant Starke looked back at Patrolman Clancy and recognized that he had arrived.

22. Defendant Starke continued to be aggressive toward Ms. Caldwell while Ms. Caldwell attempted to find out why she was being stopped in front of her home.

23. At one point, Defendant Starke attempted to shut the driver's door of the car, and Ms. Caldwell held the door open with her arm. At about the time, Defendant Piazza was arriving from the north.

24. Defendant Starke told Ms. Caldwell to get back out of her vehicle. Ms. Caldwell again asked what was going on and why she had to get back out of her vehicle.

25. Still without telling Ms. Caldwell why she had been stopped, Defendant Starke aggressively reached into Ms. Caldwell's vehicle trying to grab her body. Ms. Caldwell, who was only twenty-four at the time, was worried that Defendant Starke was trying to assault her. She therefore moved toward the passenger side door and called her mother, a community activist and criminal defense paralegal, for support and advice.

26. Defendant Starke then radioed for backup claiming that Ms. Caldwell was suspected of driving under the influence. Ms. Caldwell heard Defendant Starke make this radio call. Ms. Caldwell and her passengers who were at or near the scene denied that Ms. Caldwell was under the influence.

27. Ms. Caldwell also asked for Defendant Starke's supervisor as she did not feel comfortable with Defendant Starke given his offensive and aggressive actions.

28. Defendant Piazza parked his SUV so that the front was angled between the front of Defendant Starke's vehicle and the driver's door of Ms. Caldwell's vehicle. He exited the vehicle at the same time Defendant Starke aggressively reached into Ms. Caldwell's vehicle again trying to grab her body. Defendant Piazza donned a mask and began to put on gloves.

29. With other officers arriving on scene, Ms. Caldwell reached an agreement Defendant Starke to step out of her car. With her cell phone held to her right ear with her right hand and nothing in her left hand, Ms. Caldwell slowly stepped out of her car.

30. Defendant Starke again reached for Ms. Caldwell's body attempting to snatch her left arm.  Already scared for her safety and reacting instinctively to a man's unprovoked grab at her body yet again, Ms. Caldwell moved her left arm back and away from Defendant Starke.

31. Defendant Starke reacted by grabbing Ms. Caldwell, holding onto her, and immediately and violently slamming her to the asphalt on North New Street with the assistance of Defendant Piazza.

32. At no point during the encounter or assault was Ms. Caldwell ever informed that she was under the arrest.

33. When Defendants Starke and Piazza turned Ms. Caldwell over and lifted her to her feet, she was limping and wincing in pain.  The brutal actions of Defendants Starke and Piazza broke Ms. Caldwell's right leg/ankle/foot, which necessitated surgery and caused permanent injuries.

**Defendants' Inconsistent Statements About the Incident**

34. Defendant Starke completed an Initial Crime Report on May 13, 2020, in which he did not even state a reason for initiating the traffic stop:

> While in the area, I was travelling eastbound Mary St. east of N. New St. when I observed a silver Jaguar bearing Delaware registration 268393 travelling directly towards me, westbound on Mary St, [sic] which appeared to be occupied by four subjects. I turned my patrol vehicle around and observed the vehicle stopped on N. New St. just north of Mart St [sic] still occupied.

But on June 1, 2020, nearly three weeks later, he filed a Supplemental Report indicating he initiated the stop because Ms. Caldwell's vehicle was driving "with no headlights on."  He asserted that a technological issue was to blame for this information not being included in the Initial Crime Report.  No proof of any alleged malfunction was provided with the Supplemental Report.

35. Defendant Starke, in the Initial Crime Report, stated:

6

> As she was exiting the vehicle, I advised Caldwell to face in the opposite direction of me and to place her hands behind her back. I noticed that Caldwell was not listening as instructed and exited the vehicle facing my direction. I attempted to grab her arm and **she pulled away and began pushing me in the chest area.** A struggle ensued and during the struggle, at some point, **Caldwell struck me in the left side of the face with her right hand**, which felt like a closed fist causing me offense and alarm.

(emphasis added).

      36.    Defendant Starke, in his Affidavit accompanying Ms. Caldwell's Arrest Warrant, however, stated:

> PFC Piazza, Cpl. Griffin, PFC Clancy, and M/Cpl Lynch arrived on scene. I then asked Caldwell to produce her License, registration and insurance and she refused. [sic] Due to Caldwell's actions, I asked her to remove herself from the vehicle. Caldwell at first refused to exit the vehicle [sic] After several verbal attempts[sic] Caldwell began to exit the vehicle and I advised her to face away from my direction and attempted to grab her hand. **Caldwell then began struggling with me and during the struggle struck me in the left side of the face with her closed fist causing me offense and alarm. Caldwell was then successfully escorted to the ground**.

(emphasis added).

      37.    Defendant Piazza gave yet a third account in his Supplemental Report:

> [A]s Sharon Caldwell began exiting the vehicle … Ptlm. Starke began giving Sharon Caldwell direct orders to turn around with her hands behind her back. Writer observed that Sharon Caldwell refused to turn around and place her hands behind her back, at which time, Ptlm. Starke attempted to turn Sharon Caldwell around. Writer observed that as Ptlm. Starke reached out to turn Sharon Caldwell around, **Sharon Caldwell clinched both of her fists, and began throwing closed fisted blows toward Ptlm. Starke's face and head. Writer observed that Sharon Caldwell threw multiple closed fisted blows, striking Ptlm. Starke in the face.**
> (emphasis added).

7

38. Ms. Caldwell had a cell phone in her right hand which she held to her right ear as she talked to her mother. She did not swing at or her Defendant Starke at any time with either hand. Caldwell did not push Defendant Starke on his chest.

## A History of Excessive Force Cases Against the City

39. Three Dover police officers were sued for shooting a man twelve times who was holding a penknife in a dentist's office in June 1985.[1] Summary judgment was denied for the excessive force claim.[2]

40. Joseph Curry filed an excessive force claim against a Dover Police Department Officer alleging the officer instructed his K-9 to attack Mr. Curry while Mr. Curry was handcuffed and that the officer thereafter assaulted him.[3] This incident allegedly occurred on January 13, 2004. According to the docket, the case settled in October 2008.[4]

41. Jonathan Stevens was allowed to pursue an excessive force claim against a Detective Roswell and a Detective Knight of the Dover Police Department stemming from an October 2008 incident.[5]

42. Lateef Dickerson filed a lawsuit asserting an excessive force against a Corporal Webster, who was an officer for the City, and a *Monell* claim against the City. Mr. Dickerson encountered Corporal Webster on the evening of August 24, 2013. Corporal Webster ordered Mr. Dickerson to freeze and put his hands up. Mr. Dickerson complied. Corporal Webster struck Mr. Dickerson and told him to get on his knees. Mr. Dickerson complied. Then, without ever telling Mr. Dickerson he was under arrest, Corporal Webster knocked Mr. Dickerson unconscious. Mr.

---

[1] *Holman v. Walls*, 1989 U.S. Dist. LEXIS 6877 (D. Del. June 13, 1989).
[2] *Id.* at *35.
[3] *Curry v. Dover Police Dep't*, 2005 U.S. Dist. LEXIS 11241 (D. Del. Apr. 29, 2005).
[4] This information comes from documents on the docket in the case captioned *Curry v. Dover Police Dep't*, C.A. No. 04-175-JJF (D. Del.).
[5] *Stevens v. Roswell*, 2009 U.S. Dist. LEXIS 7082 (D. Del. Jan. 30, 2009) (analyzed under a 12(b)(6) standard).

Dickerson's claims against the City included: failure to mandate policies, practices and/or customs regarding the use of force; failure to adequately supervise and train its police officers in excessive force; and failure to investigate alleged incidents of and, when appropriate, discipline officers for using excessive force.[6] Mr. Dickerson settled his case against Corporal Webster and the City in December 2015 for $300,000.00.[7]

43.     Officers for the City were sued for excessive force in connection with throwing stun grenades at persons who were sitting on a couch and not moving in compliance with the officers' orders. In the same suit but apparently in a different incident, officers for the City were accused of pointing guns at, taking to the ground, and handcuffing a ten year old girl. These events occurred in January 2015. Based upon the docket, it appears the case was settled.[8]

44.     Two officers for the City were sued for excessive force by Thomas Clark for aggressively pursuing him while he was on a bicycle, tackling him off of his bicycle, and then punching him once he was handcuffed. Mr. Thomas was beat until he was unconscious and thrown in a holding cell. It was not until the next day, when a new shift of officers arrived, that he was taken for medical treatment. This event occurred in August 2017. After filing his Complaint, Mr. Thomas faced retaliation from the officers of the City. A Stipulation of Dismissal was filed on January 5, 2021.[9]

---

[6] This information comes from documents on the docket in the case captioned *Dickerson v. Webster, et al.*, C.A. No. 1:14-cv-01244-RGA (D. Del.).

[7] "Man kicked by Dover cop got $300k", Delaware Online, Feb. 7, 2017, *available at* https://www.delawareonline.com/story/news/local/2017/02/06/man-kicked-dover-cop-got-300k/97549558/, retrieved Apr. 29, 2022.

[8] This information comes from documents on the docket in the case captioned *Warren, et al., v. Del. State Police, et al.*, 1:15-cv-01186 RGA.

[9] This information comes from documents on the docket in the case captioned *Clark v. Hurd, et al.*, C.A. No. 1:18-cv-01538 LPS (D. Del.).

45.     Heddyr Ramirez sued two Dover police officers for excessive force arising from an incident on March 2, 2019, in which they assaulted Mr. Ramirez while he was in his vehicle. That case is ongoing.[10]

### Ms. Caldwell's Damages

46.     As a result of the intentional and/or reckless actions of Defendants Starke, Piazza, Johnson, and the policies, practices, and/or customs of the City, Ms. Caldwell sustained the following damages:

    a.    Bodily injuries, including to her lower right extremity;

    b.    Fear and apprehension for her physical safety;

    c.    Deprivation of her rights secured by the Constitutions and laws of the United States of America and the State of Delaware;

    d.    Mental and emotional stress and anxiety;

    e.    Lost wages; and

    f.    Inconvenience to and disruption of her life.

### COUNT I – EXCESSIVE FORCE

### (Against Defendants Starke and Piazza)

47.     Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

48.     At all times relevant, Starke and Piazza were acting under color of state law.

49.     Starke and Piazza knowingly, intentionally, and/or recklessly used excessive force against Ms. Caldwell on the night of May 13, 2020.

---

[10] This information comes from documents on the docket in the case captioned *Ramirez v. Dover Police Dep't, et al.*, C.A. No. 1:21-cv-00199 LFR (D. Del.).

50. Ms. Caldwell had a right to be free of excessive force. Starke and Piazza knowingly, intentionally, and/or recklessly violated Ms. Caldwell's rights under the Fourth Amendment to the United States Constitution as secured by 42 U.S.C. §1983.

51. As a result of these Constitutional violations, Ms. Caldwell suffered the damages identified in Paragraph 46.

## COUNT II – FAILURE TO INTERVENE

### (Against Defendant Piazza)

52. Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

53. At all times relevant, Piazza was acting under color of state law.

54. Alternatively, Piazza was present when Starke knowingly, intentionally, and/or recklessly used excessive force against Ms. Caldwell on the night of May 13, 2020, and observed Starke's use of excessive force.

55. The level of force used by Lynch was clearly excessive and was apparent to Evick.

56. While he was close enough and able to intervene to stop Lynch's use of excessive force, Piazza failed to intervene and stop Starke's use of excessive force.

57. Ms. Caldwell had a right to be free of excessive force. Piazza failed to intervene while Starke knowingly, intentionally, and/or recklessly violated Ms. Caldwell's rights under the Fourth Amendment to the United States Constitution as secured by 42 U.S.C. §1983.

58. As a result of these Constitutional violations, Ms. Caldwell suffered the damages identified in Paragraph 46.

## COUNT III – *MONELL* LIABILITY

### (Against Defendants City of Dover, Delaware)

59.   Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

60.   As recounted above, lawsuits alleging excessive force by the City's police officers have been made since 1989.  Moreover, six lawsuits including allegations of excessive force by the City's police officers have been filed in the last 22 years.  Four of those six lawsuits have stemmed from incidents occurring in the last ten years.  Most of these cases appear to have been settled.  The clear inference is that the City's policies and/or customs regarding the use of force by its police officers are getting worse rather than better.

61.   Defendant City has a policy or custom of:

a.   Failure to mandate policies, practice, and/or customs regarding the use of force;

b.   Failure to adequately supervise and/or train its police officers in excessive force; and

c.   Failure to investigate alleged incidents of excessive force and, when appropriate, discipline officers for using excessive force.

62.   . The history of allegations against the City, including the highly-publicized video of Corporal Webster assaulting Lateef Dickerson without justification, put the City on notice of the need for more and/or better training and policies regarding the use of force.  Police forces and their decision makers are well aware that interactions between police officers and the public involving the use of force are common.  The City's failure to take any step(s) to address its problems with the use of force by its officers demonstrates a deliberate indifference to the rights of the citizens of Dover and those who may visit or travel through Dover.

63. Ms. Caldwell has a right to be free of excessive force, abuse of process, and unlawful arrest/detention. The policies and/or customs of the City and Johnson directly led to the violations of the Fourth Amendment to the United States Constitution as secured by 42 U.S.C. § 1983.

64. As a result of these Constitutional violations, Ms. Caldwell suffered the damages identified in Paragraph 46.

## COUNT IV – WANTON NEGLIGENCE

### (Against Defendants Starke and Piazza)

65. Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

66. The standard of care requires an officer to only use force against a member of the public or a suspect that is reasonable under the circumstances to protect the officer and others from harm.

67. When Defendant Starke attacked Ms. Caldwell, she was obeying his commands by exiting the vehicle. Moreover, she was holding a cellular phone to her ear and talking to her mother.

68. Ms. Caldwell did not provoke Defendant Starke in any way. She exited the car as she was instructed, which was not antagonistic or threatening to Starke or anyone else nearby.

69. Defendants Starke and Piazza's attack therefore was an extreme departure from the standard of care required of police officers when using force and dealing with generally with the public.

70. As a direct and proximate result of Defendants Starke's and Piazza's actions, Ms. Caldwell suffered the damages identified in Paragraph 46.

### COUNT V – BATTERY

### (Against Defendants Starke and Piazza)

71. Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

72. Defendant Starke's and Piazza's actions amounted to an intentional, unpermitted contact with Ms. Caldwell's person.

73. Defendant Starke's and Piazza's contact with Ms. Caldwell was harmful and offensive.

74. Neither Defendant Starke nor Piazza had reason or justification to harmfully and offensively touch Ms. Caldwell.

75. As a direct and proximate result of Defendants Starke's and Piazza's actions, Ms. Caldwell suffered the damages identified in Paragraph 46.

### COUNT VI – ASSAULT

### (Against Defendant Starke)

76. Plaintiff incorporates the preceding allegations as though they are expressly stated in this Count.

77. Defendant Starke intended to cause a harmful or offensive contact with Ms. Caldwell.

78. Defendant Starke intended to cause Ms. Caldwell an imminent apprehension of harmful or offensive contact.

79. Ms. Caldwell, while trying to comply with Defendant Starke's orders, was put in imminent apprehension of such contact.

80. As a direct and proximate result of Defendant Starke's actions, Ms. Caldwell suffered the damages identified in Paragraph 46.

WHEREFORE Plaintiff ShaRon Caldwell respectfully requests this Court:

A. Grant judgment in her favor and jointly and severally against Defendants Dale E. Starke, James P. Piazza, and the City of Dover, Delaware;

B. Award her special damages as she can prove;

C. Award her compensatory damages as she can prove;

D. Award her punitive damages against Defendants Starke and Piazza;

E. Award her costs and attorneys' fees for prosecuting this action;

F. Award her pre- and post-judgment interest; and

G. Grant such other relief as the Court deems proper.

**JACOBS & CRUMPLAR, P.A.**

 /s/ Patrick C. Gallagher
Patrick C. Gallagher, Esq. (DE Bar 5170)
750 Shipyard Drive, Suite 200
Wilmington, DE  19801
(t) (302) 656-5445
(f) (302) 656-5875
*Attorney for Plaintiff*

DATE:  November 6, 2022